**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


**USCOC of New Hampshire RSA #2, Inc.,
d/b/a US Cellular**

     **v.**

Case No. 05-cv-268-PB
Opinion No. 2006 DNH 096

**City of Concord, New Hampshire**


**MEMORANDUM AND ORDER**

USCOC of New Hampshire RSA #2, Inc., doing business as US Cellular ("US Cellular"), moves for summary judgment on its claim that the City of Concord, New Hampshire (the "City"), violated the Telecommunications Act of 1996 (the "TCA") because the denial of US Cellular's application for a conditional use permit to construct a wireless telecommunications facility was not supported by substantial evidence contained in a written record.[1] Because I find substantial evidence in the record to support the City's decision, I deny US Cellular's motion for summary judgment.

---

[1] US Cellular's other claim is that the City violated the TCA by effectively prohibiting US Cellular from providing personal wireless services. Compl. ¶ 29. US Cellular is not seeking summary judgment on that claim in the present motion.

I.   BACKGROUND[2]

A.   Zoning Requirements

The Concord zoning ordinance requires a conditional use permit for new installations of wireless telecommunications equipment, including cellular towers.  Concord Zoning Ordinance ("Ordinance") § 28-5-23(b)(1).  The City's Planning Board ("Planning Board" or "Board") must approve an application for a conditional use permit if it finds that:

> a.  The use is specifically authorized in [the zoning] ordinance as a conditional use;
> b.  If completed as proposed by the applicant, the development in its proposed location will comply with all requirements of [Article 28-9 of the ordinance], and with the specific conditions or standards established in th[e] ordinance for the particular use;
> c.  The use will not materially endanger the public health or safety;
> d.  The use will be compatible with the neighborhood and with adjoining or abutting uses in the area in which it is to be located;
> e.  The use will not have an adverse effect on highway or pedestrian safety;
> f.  The use will not have an adverse effect on the natural, environmental, and historic resources of the City; and
> g.  The use will be adequately serviced by necessary public utilities . . . and will not necessitate excessive public expen

_____

[2]  I construe the facts in the light most favorable to the City, the non-moving party.  Citations are to the Certified Record ("CR") submitted by the City as Exhibit A to the Declaration of Douglas Woodward ("Woodward Decl.").

with sufficient additional capacity.

Id. § 28-9-4(b)(4).

In addition to the general requirements for a conditional use permit, wireless telecommunications equipment must meet minimum installation requirements, including being "the least size and height necessary to perform their intended functions and to maximize opportunities for co-locations." Id. § 28-5-23(f)(3). The zoning ordinance's design standards require that "[e]very reasonable effort shall be taken to design [the installation] so as to minimize its visual impact." Id. § 28-5-23(g). All wireless telecommunications equipment must be "designed to be incorporated into the architectural appearance of new or existing buildings . . . or into the visual fabric of other manmade or natural structures or features so as to make the equipment inconspicuous and the installation indistinguishable from those buildings or features when viewed at any point beyond the limits of the host property." Id. (emphasis added).

The ordinance also provides alternative design standards for certain districts if the applicant provides evidence that the installation cannot be made inconspicuous and indistinguishable. Id. § 28-5-23(h). In "open space residential" districts,

-3-

installations may extend twenty feet above the average tree height; in "general commercial" and "industrial" districts, installations may be placed on roofs or next to buildings "such that not more than twenty (20) feet of the installation is visible from any adjacent street or property." Id.

**B.   US Cellular's Application**

In March 2005, US Cellular submitted an application to the Planning Board for a conditional use permit to construct a 130-foot wireless telecommunications tower on an 11.8 acre parcel located at 49 Donovan Street. CR at 134. The site is located near the City's border with the town of Bow, west of Interstate 93 between Exit 12 and the interchange with Interstate 89. Id. at 147, 156. The tree survey submitted with US Cellular's application shows only two existing trees taller than 100 feet, with the tallest being 115 feet. Id. at 149, 203. The primary objectives for the new tower were (1) "to provide 'In-Building' coverage to as many of the residential and non-residential customers in Concord and Bow as possible" and (2) "to provide 'In-Vehicle' coverage to residents of Concord, Bow and other US Cellular subscribers who travel in or through the coverage area . . . on both state roads and secondary roads." Id. at 155.

-4-

The City's Architectural Design Review Committee ("ADRC")
reviewed US Cellular's application on April 12, 2005.[3]  Id. at
111.  At the meeting, US Cellular's representative, Kenneth
Kozyra, described the results of a balloon test conducted on
March 18, 2005, during which a red balloon was flown at the
height and location of the proposed tower.  Id. at 114.  He
stated that the tower would be "as invisible as possible to the
residential area around it, which makes it most visible to the
Interstate and the commercial area."  Id.  Members of the
committee nevertheless commented that they thought the tower
"would be very visible, especially from I-93," and they did not
think the tower would be "inconspicuous and indistinguishable
from the background as required in the Zoning Ordinance."  Id. at
115, 280.

On April 20, 2005, the Planning Board found US Cellular's
application ready for consideration and scheduled a public
hearing on the application for May 18, 2005.  Id. at 10-11.  US
Cellular submitted a revised application to the Board on April

---

[3] The ADRC makes non-binding recommendations to the Planning
Board concerning applicants' conformance with the Board's
Architectural Design Guidelines.  See Ordinance § 28-9-6.

27, 2005.  Id. at 178.

At the May 18 hearing, Mr. Pollock, a member of the City's
Planning Division, summarized US Cellular's application and the
ADRC's findings from its April 12, 2005 meeting.  Id. at 53.
Pollock reported that the tower would be "45 feet higher than the
tallest nearby tree, and 60 to 65 feet above the trees located
between the proposed tower and I-93."  Id.  He suggested that US
Cellular "should demonstrate why the communication service cannot
be established by means of co-locating on another existing tower,
or why a less visually intrusive location cannot be utilized for
a new tower."  Id.  A representative from Primex, an abutter to
the proposed location, expressed his opposition to the proposed
tower.  Id. at 55.  The Board continued further hearing on the
application to allow US Cellular "to provide photo-simulations of
different types of towers on this site and to provide views from
I-93 from both directions."  Id.

US Cellular subsequently conducted additional balloon tests
and presented photosimulations of various tower types to the ADRC
at its June 7, 2005 meeting.  Id. at 125.  The ADRC "recommended
approval of the monopine option with an irregular shape and
appropriate color to help it fade into the existing vegetation

-6-

surrounding it." Id. at 126.  The committee asked US Cellular to "provide a specific design for the tower for further review and consideration showing the actual monopine within the photosimulation." Id.

The Planning Board held a public meeting on June 22, 2005,[4] at which it again considered US Cellular's application. Id. at 104.  Mr. Woodward, a member of the City's Planning Division, reported that

> it was the position of the Planning Division that the design of the tower did not meet the Zoning Ordinance standards and requirements.  The tower must be made inconspicuous and/or indistinguishable when viewed beyond the limits of the host property.  The proposed wireless tower is 96 feet from the right-of-way of I-93 at the southern entry to the city, and the related clearing would diminish the natural vegetation to a depth of as little as 25 feet from the I-93 right-of-way within which there are no trees of any significant height.

Id. at 105.  He further noted that US Cellular had not "demonstrated why the telecommunication service cannot be established by means of co-locating on another existing tower or towers, or why a less visually intrusive location or locations cannot be utilized for a new tower or towers." Id.  He also

---

[4] The meeting was continued from June 15, 2005.  CR at 87.

commented that a primary service area for the new tower is in the town of Bow, which does not permit cellular towers in that area. Id.  He noted that US Cellular "ha[d] not applied for any variances within the zones wherein the tower would not be permitted."  Id.

Ms. Meyer, a member of the Planning Board, "reported that she had viewed the balloon test and felt that since this is a gateway to Concord, this is not a good location for the tower. She felt that turning the structure into a tree would not make it any less obvious . . . . [and] the location was totally inappropriate."  Id.

Kozyra, who was present on behalf of US Cellular, "presented photo-simulations of mono-pine, mono-pole, and lattice style towers at the site from a number of locations.  Based on these photos and the related video they had also done, he reported [that US Cellular thought] mono-pine is the best option for this site."  Id.  He also indicated that they had looked into products offered by other manufacturers and still thought that "the monopine was the best solution for disguising the tower as unobtrusively as possible."  Id.

The Board ultimately voted six to three in favor of denial

of the permit.  Id. at 107.  On June 28, 2005, the Board sent US
Cellular a letter setting forth three reasons for its decision,
one of which was that the proposed tower did not meet the
standards of § 28-5-23(g) of the zoning ordinance.  Id. at 296.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).

The party moving for summary judgment "bears the initial
responsibility of . . . identifying those portions of [the
record] which it believes demonstrate the absence of a genuine
issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,
323 (1986).  Once the moving party has met its burden, the burden
shifts to the adverse party to "produce evidence on which a
reasonable finder of fact, under the appropriate proof burden,
could base a verdict for it; if that party cannot produce such
evidence, the motion must be granted."  <u>Ayala-Gerena v. Bristol</u>

-9-

Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996).  The "adverse
party may not rest upon the mere allegations or denials of the
adverse party's pleading, but the adverse party's response . . .
must set forth specific facts showing that there is a genuine
issue for trial."  Fed. R. Civ. P. 56(e); see also Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## III.   ANALYSIS

### A.   Motions to Strike

The parties disagree as to which documents I should consider
in analyzing US Cellular's substantial evidence claim.  The City
filed a motion to strike the declaration of Kenneth Kozyra, which
accompanies US Cellular's motion for summary judgment, on the
basis that it is "replete with comments, opinions, and
characterizations of events and applicable law that are not part
of the record before the City."[5]  Def.'s Mot. to Strike ¶ 3.  US
Cellular filed a motion to strike portions of the declaration of
City Planner Douglas Woodward, as well as documents in the City's

---

[5] The City also moved to strike "all of those portions of US
Cellular's motion for summary judgment and memorandum of law in
support thereof that cite to or rely on Mr. Kozyra's
declaration."  Def.'s Mot. to Strike ¶ 4.

"certified record" that US Cellular contends were not considered by the Board in reaching its decision.  Pl.'s Mot. to Strike ¶ 12.

In determining whether the Planning Board's decision is supported by substantial evidence, my "review is confined to the administrative record, absent a claim of procedural irregularity."  Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 22 (1st Cir. 2002).  Applying this standard, I decline to consider the Kozyra and Woodward declarations except to the extent that they are necessary to contextualize the documents that comprise the administrative record.

US Cellular also argues that certain documents should be stricken from the City's certified record because they were not "presented to" or "actually considered by" the Planning Board.  Pl.'s Mot. to Strike ¶ 6, 9.  The contested documents include correspondence from city residents to the Board, e-mails to Woodward, photographs taken by the Planning Division and by abutters to the proposed project, and newspaper articles dated March 21 through August 29, 2005.  CR at 301–03, 312–29.  The City counters that any materials submitted to the Board, "whether

-11-

during a hearing, by mail, by email, or in person," are part of
the record and may be considered by the Board in reaching its
decision.  Def.'s Obj. to Pl.'s Mot. to Strike at 3.

I agree with the City that its designation of the certified
record is entitled to a presumption of regularity and it need not
show that the Board "actually considered" the documents contained
therein.[6]  See N.H. Rev. Stat. Ann. § 677:10 (For purposes of
review on appeal, "[a]ll evidence transferred by the zoning board
of adjustment or the local legislative body shall be . . .
considered by the court regardless of any technical rule which
might have rendered the evidence inadmissible if originally
offered in the trial of an action at law.").  Accordingly, I deny
US Cellular's motion to strike documents from the certified
record.

B.   **Substantial Evidence Claim**

"Congress enacted the Telecommunications Act of 1996 (TCA),
110 Stat. 56, to promote competition and higher quality in

---

[6] The only document that could not have been before the
Board is the "letter to the editor" dated August 29, 2005, which
was written after the Board issued its decision.  CR at 316-17.
Neither party has relied on this document to support its
arguments.

American telecommunications services and to 'encourage the rapid
deployment of new telecommunications technologies.'  One of the
means by which it sought to accomplish these goals was reduction
of the impediments imposed by local governments upon the
installation of facilities for wireless communications, such as
antenna towers." City of Rancho Palos Verdes v. Abrams, 544 U.S.
113, 115 (2005) (citation omitted).  The provision of the TCA at
issue here, 47 U.S.C. § 332(c)(7), "is a deliberate compromise
between two competing aims – to facilitate nationally the growth
of wireless telephone service and to maintain substantial local
control over siting of towers." Town of Amherst v. Omnipoint
Communications Enters., Inc., 173 F.3d 9, 13 (1st Cir. 1999).

"The Act attempts, subject to five limitations, to preserve
state and local authority over the placement and construction of
facilities." Nat'l Tower, 297 F.3d at 19.  One limitation is
that:

> Any decision by a State or local government or
> instrumentality thereof to deny a request to place,
> construct, or modify personal wireless service
> facilities shall be in writing and supported by
> substantial evidence contained in a written record.

47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added).  "If a board
decision is not supported by substantial evidence, . . . then

–13–

under the Supremacy Clause of the Constitution, local law is pre-empted in order to effectuate the TCA's national policy goals." <u>Second Generation Props., L.P. v. Town of Pelham</u>, 313 F.3d 620, 627 (1st Cir. 2002).

To comply with the TCA, the Planning Board must "issue a written denial separate from the written record.  That written denial must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons." <u>Southwestern Bell Mobile Sys., Inc. v. Todd</u>, 244 F.3d 51, 60 (1st Cir. 2001). The "substantial evidence" standard of review is the same as that traditionally employed in judicial review of an administrative agency's findings of fact. <u>Id.</u> at 58.  US Cellular bears the burden of showing that substantial evidence is lacking to support the Board's decision. <u>See</u> <u>id.</u> at 63.  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such evidence as a reasonable mind might accept as adequate to support a conclusion." <u>ATC Realty, LLC v. Town of Kingston</u>, 303 F.3d 91, 94 (1st Cir. 2002) (quotation omitted).  Although I must take into account contradictory evidence in the record, "the possibility of drawing two inconsistent conclusions from the

-14-

evidence does not prevent [the Board's] finding from being supported by substantial evidence." Southwestern Bell, 244 F.3d at 58 (quotation omitted).

The Planning Board concluded that US Cellular's application for a conditional use permit did not meet the standards of the zoning ordinance.  The Board cited the following reason for its decision:

> The installation of wireless telecommunications equipment at a height of 130 feet on [the proposed] site does not meet the standards of Section 28-5-23(g) of the Zoning Ordinance.  As revealed in the photos, it will be quite conspicuous and distinguishable.

CR at 296.  The Board further explained that:

> In taking this vote, Board members expressed particular concern with the prominence of the proposed site at the entry to the City of Concord on Interstate 93, and that unlike the other monopine tower erected by US Cellular south of I-393 that tends to blend into adjacent tree cover, this tower would be quite distinguishable from both directions on the highway, as well as from adjacent businesses and homes.  After examining the photo-simulations presented by the applicant, Board members indicated their opinion that the proposed installation cannot be appropriately mitigated, and they noted that the photos did not portray the views from the perspective of the residential neighbors or from Primex, a neighboring business which had expressed concern about the impact of the proposed tower. . . .

Id. at 296-97.

There is substantial evidence in the record to support the

-15-

Board's finding that the proposed tower would not be inconspicuous and indistinguishable.  At the May 18, 2005 Planning Board meeting, Pollock reported that the tower would be "45 feet higher than the tallest nearby tree, and 60 to 65 feet above the trees located between the proposed tower and I-93." Id. at 53, 104.  Although US Cellular's tree survey shows two existing trees in the vicinity taller than 100 feet, all of the other trees surrounding the site are 85 feet or less.  See id. at 149, 203.  US Cellular's representative conceded that in making the tower "as invisible as possible to the residential area around it," the tower would be "most visible to the Interstate and the commercial area."  Id. at 114.

Three Board members reported that they had seen balloon tests at the proposed tower location.  Id. at 55, 105.  One member thought that "the entire structure will be visible."  Id. at 55.  Another member thought that it was "not a good location for the tower" because it is "a gateway to Concord" and "turning the structure into a tree would not make it any less obvious." Id. at 105.  The third member reported that "she had seen the balloon test and noted that this tower will be seen right in

front of the driver."[7]  Id. at 106.  US Cellular also submitted

photographs of its balloon tests to the Board, which reveal that

the tower would be visible from various residential and

commercial locations as well as portions of the highway.  Id. at

159-77, 249-68.  The photosimulations show that from some views,

the tower would be taller than the neighboring trees or would be

the only visible "tree" in the area.  See id. at 250, 254, 258,

266.

Despite US Cellular's contention that the Board members

merely relied on their subjective views about the proposed tower,

I find that the evidence in the record supports their conclusion

that the tower would not be inconspicuous and indistinguishable

from various vantage points in Concord.  The TCA does not prevent

local authorities "from exercising their traditional prerogative

to restrict and control development based upon aesthetic

considerations, so long as those judgments do not mask . . . a de

facto prohibition of personal wireless services."  Southwestern

Bell, 244 F.3d at 61.  This is not a case where the Board members

---

[7] The Planning Board also received letters from Primex and
other abutters to the proposed location who objected to the
construction of a tower in that area.  CR at 105, 298, 301-03.

negative comments are "applicable to any tower, regardless of location." Id. Rather, they are grounded in the specifics of US Cellular's proposal and are based on the record before the Board and the Board members' first-hand observations.

US Cellular argues that the Board applied the wrong standard under the zoning ordinance and did not consider US Cellular's efforts to minimize the visual impact of the tower. These arguments also lack merit. The Board's finding that the proposed tower is "conspicuous and distinguishable" mirrors the language of the zoning ordinance, which requires equipment to be "inconspicuous" and the installation "indistinguishable" from the surrounding environment. Ordinance § 28-5-23(g). Likewise, the ADRC and the Planning Board both considered the various tower designs presented by US Cellular and ultimately agreed that the monopine tower would have the least visual impact. CR at 105-06, 125-26. Nonetheless, the Board was entitled to exercise its aesthetic judgment and find that the proposal did not meet the City's zoning standards. See Southwestern Bell, 244 F.3d at 61.

Therefore, I find that the Board's denial of US Cellular's application on the basis that it does not meet the standards of § 28-5-23(g) is supported by substantial evidence in the written

record.[8]

#### IV.   CONCLUSION

US Cellular's Motion for Summary Judgment (Doc. No. 8) is denied.  The parties may proceed with discovery on US Cellular's remaining claim.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 28, 2006

cc:  Steven E. Grill, Esq.
     James P. Bassett, Esq.

---

[8] The Planning Board provided two additional reasons for its denial of US Cellular's application.  Because I find substantial evidence in the written record to support the Board's decision on the basis that the proposed tower did not meet the zoning standards, I need not reach the Board's other reasons.  See Southwestern Bell, 244 F.3d at 60 n.3.